**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 21-CR-0041-CJN-2** |
| | : | |
| **MICHAEL THOMAS CURZIO,** | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S**
**MOTION FOR MODIFICATION OF PRETRIAL DETENTION ORDER**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes defendant Michael Curzio's motion for modification of pretrial detention order ("Motion," ECF No. 29), filed on February 14, 2021. In support of this opposition, the government relies on the following factual and legal authorities, as well as any that may be offered at a hearing on this motion.

## FACTUAL BACKGROUND

### Charges and Detention Order

On January 21, 2021, Michael Curzio (hereinafter "Curzio") and five codefendants were charged by an amended information with four misdemeanors: (1) Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

At Curzio's initial appearance before Magistrate Judge Philip R. Lammens (hereinafter "Magistrate Judge Lammens") in the Middle District of Florida on January 14, 2021, the government orally moved to detain Curzio before trial, and the magistrate ordered Curzio

temporarily detained pending a detention hearing. Following the detention hearing on January 21, 2021, Magistrate Judge Lammens granted the government's motion and issued an Order of Detention Pending Trial ("Detention Order"), finding (1) by clear and convincing evidence, no condition or combination of conditions of Curzio's release would reasonable assure the safety of any other person and the community, and (2) by a preponderance of the evidence, no condition or combination of conditions of release would reasonably assure Curzio's future appearance in court as required, pursuant to 18 U.S.C. § 3142(g). (Detention Order at 2 (ECF No. 21)).

**ARGUMENT**

**Authorities**

A detention hearing may be reopened at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). However, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). District courts apply a de novo standard of review in evaluating a magistrate judge's detention decision. *United States v. Karni*, 298 F. Supp. 2d 129, 130 (D.D.C. 2004).

The Court should analyze four factors under 18 U.S.C § 3142(g) in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2)

the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. A review and understanding of the facts and circumstances in this case suggest there is no condition or combination of conditions that would reasonably assure Curzio's future appearance in court or the safety of any other person and the community if he is released.

**Nature and Circumstances of the Offense**

The charges in the amended information stem from Curzio's conduct on January 6, 2021, at the United States Capitol, located at First Street, S.E., within Washington, D.C.[1]

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Vice President Mike Pence was present and presiding in the Senate chamber.

With the joint session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades surround the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the United States Capitol Police, and the crowd advanced to the exterior façade of the building. At such time, the joint session was still underway, and the exterior doors and windows

[1] The facts set forth in this section are derived from the statement of facts supporting the complaint and arrest warrant (Attach. 1 to ECF No. 1).

of the U.S. Capitol were locked or otherwise secured. Members of the United States Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the United States Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

In this context, at or about 3:00 p.m., a United States Capitol Police officer (hereinafter "USCP officer") responded along with other members of the Capitol Police to a disturbance involving several dozen people who were inside the United States Capitol without lawful authority, under the circumstances described above. The USCP officer observed the crowd moving together in a disorderly fashion, and observed members of the crowd engage in conduct such as making loud noises, and kicking chairs, throwing an unknown liquid substance at officers, and spraying an unknown substance at officers.

In a loud and clear voice, Capitol Police officers ordered the crowd to leave the building. The crowd did not comply, and instead responded by shouting and cursing at the Capitol Police officers. The USCP officer observed that the crowd, which at the time was located on the Upper Level of the United States Capitol Visitors Center near the door to the House Atrium, included the six individuals who were later identified to be Cindy Fitchett, Curzio, Douglas Sweet, Terry Brown, Bradley Rukstales, and Thomas Gallgher. These six individuals were positioned towards

the front of the crowd, close to the Capitol Police officers who were responding, and to the officer who issued the order to leave. The six individuals, like others in the larger crowd, willfully refused the order to leave. The six individuals, Cindy Fitchett, Curzio, Douglas Sweet, Terry Brown, Bradley Rukstales, and Thomas Gallgher, were removed from the crowd, placed in handcuffs, and arrested. Subsequently, Cindy Fitchett, Curzio, Douglas Sweet, Terry Brown, Bradley Rukstales, and Thomas Gallgher were all issued Citations to Appear in the District of Columbia Superior Court on a later date.

Curzio is charged with four misdemeanors, none of which qualify as a crime of violence or involved any of the characteristics listed in 18 U.S.C. § 3142(g)(1). Still, his conduct was troubling. As Curzio argues, the statement of facts supporting the arrest warrant and complaint does not attribute violent conduct to Curzio specifically. (Motion at 2.) Yet he chose to participate in an unruly crowd that moved together in a disorderly fashion, kicked chairs, and threw and sprayed substances at officers. Even after an officer directed Curzio and the crowd to leave the building, the crowd shouted and cursed at officers, and Curzio and others refused to vacate.

Curzio seeks to downplay the seriousness of his conduct by arguing that he was free to enter the Capitol because "the doors were already open and police officers were letting the crowd in" (Motion at 2), police issued Curzio "a citation to appear at the District of Columbia Superior Court at a later date" (Motion at 2), and "it was impossible" to leave the Capitol after police ordered him to do so "because of the large crowd that was blocking the exits" (Motion at 4). However, the Capitol is a building well known to have restricted access and enhanced security and Curzio's assertion that he was let in disregards the chaotic context of what occurred on January 6. Further, even if he walked into the Capitol through unlocked doors, he unlawfully remained inside the

building after an officer ordered him to leave. While Curzio was issued a citation and released, Curzio's inference that this negates the seriousness of the offense disregards the context of what was occurring inside and outside the Capitol. The Court could alternatively infer that these officers were attempting to process Curzio and his codefendants as quickly as they could while they were still besieged. Lastly, while Cuzio's claim that he was not able to leave may be a factual dispute and an argument for Curzio to raise at trial, the evidence presented thus far sufficiently demonstrates Curzio was a willing participant in an disruptive crowd that unlawfully entered the Capitol, and he remained inside the building after being ordered to leave. Further, during a pretrial detention hearing, the government need not specify how it will prove every element of the offenses at trial nor rebut every argument that can be raised at trial. *See Martir*, 782 F.2d at 1145 ("[A] government proffer need not always spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use.").

**Weight of the Evidence**

As noted in the Detention Order, the weight of the evidence against Curzio is strong. Curzio was arrested on the scene in a restricted building where he had no lawful authority to be. He concedes he was present in the building, albeit to exercise his First Amendment right to protest and because he "merely follow[ed] the directions of then-President Trump, who has billed himself as the country's chief law enforcement officer." (Motion at 4.) This assertion regarding Curzio's motivation for unlawfully entering the Capitol does not diminish the substantial evidence of his unlawful presence there.

**Defendant's History and Characteristics**

Curzio has a prior conviction for Attempted First Degree Murder in Florida, which is a serious offense involving violence. He was sentenced to eight years of confinement for that crime, with 365 days credited to his sentence, and was released on February 7, 2019. While Curzio does not appear to have been on any court supervision following his release, his commission of the current offenses less than two years after his release from confinement for a serious felony is troubling.

**Nature and Seriousness of Danger Posed by the Defendant's Release**

The charged crimes took place in the District of Columbia, while the defendant resides in and was arrested in the Middle District of Florida. The defendant's willingness to travel across the country to engage in criminal endeavors is concerning. Further, he committed these offenses – involving his willing participation in a disorderly crowd – within only two years of his release from confinement for a very violent crime, Attempted First Degree Murder. His prior conviction and confinement obviously did not chasten his participation in further unlawful conduct.

In conclusion, Curzio's arguments to modify bond are not based on "information . . . that was not known to the movant at the time" of his detention hearing, and his assertions do not have a "material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). He should remain detained pending trial.

WHEREFORE, for the foregoing reasons, for the reasons enumerated in Magistrate Judge Lammens's Detention Order, and for any other such reasons as may appear to the Court, the

government respectfully requests that the Court DENY Curzio's Motion for Modification of Pretrial Detention Order, and that Curzio remain held without bond pending trial.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
N.Y. Bar No. 4444188

BY: *___/s/Tara Ravindra____________________*

TARA RAVINDRA
Assistant United States Attorney
D.C. Bar Number 1030622
202-252-7672

SETH ADAM MEINERO
Trial Attorney
Detailee
D.C. Bar Number 976587
202-252-7012

United States Attorney's Office for the District of Columbia
Federal Major Crimes Section
555 4th Street, N.W., Fourth Floor
Washington, DC 20530

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 18, 2021, I served a copy of this pleading on defendant's counsel through the Court's electronic filing system.

*/s/Tara Ravindra*
TARA RAVINDRA
Assistant United States Attorney