UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. No. 21-CR-41-CJN-2** |
| | : | |
| **MICHAEL CURZIO,** | : | |
| *Defendant.* | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S
### MOTION TO RECONSIDER PRETRIAL-DETENTION ORDER

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this opposition to defendant Michael Curzio's motion to reconsider pretrial-detention order ("Motion," ECF No. 50), filed on April 9, 2021, following the D.C. Circuit's decision in *United States v. Munchel,* 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021). In support of this opposition, the government relies on the following factual and legal authorities, as well as any that may be offered at the hearing on the Motion, set for April 21, 2021.

### BACKGROUND

Curzio stands before the Court charged by an amended information, alongside five codefendants, with four misdemeanors: (1) Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); (3) Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). These charges arise from his participation in the breach of and riot at the United States Capitol in Washington, D.C., on January 6, 2021 ("Capitol Riot").

The government provided detailed factual background about Curzio and this case in its opposition and supplemental opposition to his prior motion for bond review. (ECF Nos. 32 and 34.) That background indicated that Curzio joined an unruly mob of rioters that threw objects at U.S. Capitol Police ("USCP") officers and sprayed liquids at them. It also noted that the USCP asked Curzio to leave the building, but he refused to do so.

On March 9, 2021, the Court held a hearing on Curzio's prior motion for bond review. After hearing arguments from both parties, the Court followed the two-step process set forth in *United States v. Singleton,* 183 F.3d 7, 9, 12 (D.C. Cir. 1999). First, it found that, pursuant to 18 U.S.C. § 3142(f)(2)(A), the government had appropriately requested, and the magistrate judge properly held, a detention hearing for Curzio in the Middle District of Florida on January 19, 2021. (3/9/2021 Tr. at 25.)[1] Second, the Court weighed each of the four factors under 18 U.S.C. § 3142(g) and determined that there were no conditions that would reasonably assure the safety of any other person and the community were Curzio to be released. (3/9/2021 Tr. at 32.)

Under § 3142(g)(1), the Court found that the misdemeanors with which Curzio is charged do not adequately capture the seriousness of his conduct. He joined rioters who breached the seat of government and thrust chairs and substances at officers, his participation showed a "disregard for the rule of law, a democratic process and a peaceful transition of power," and he defied police orders to vacate the premises. This factor weighed "somewhat in favor, but in favor of detention." (3/9/2021 Tr. at 28.)

Under § 3142(g)(2), the Court found that the weight of the evidence against Curzio in this case is "strong." Curzio was arrested inside the Capitol, knew he was not supposed to enter the

---

[1] The transcript for the March 9, 2021, motions hearing is attached to this opposition.

2

restricted building, remained inside the building despite a police order to leave, acknowledged he entered the building and admitted he did not follow the police order, and was a willing participant in a disruptive crowd. This factor weighed "in favor" of detention. (*Id.* at 30-31.)

Under § 3142(g)(3), the Court found Curzio's history and characteristics weighed "heavily" in favor of detention. Notably, Curzio had a recent prior conviction for Attempted First Degree Murder in Florida for which he spent time in prison and was released less than two years before the current charged offenses. In addition, the Court found it was undisputed that Curzio was a member in a violent white-supremacist prison gang, the Unforgiven, while he served time in the Florida corrections system. Curzio bears tattoos with Nazi imagery. During his arrest, Curzio was wearing a necklace with a pendant of Thor's hammer, which the government argued is a "White Power" symbol, but which Curzio argued was a symbol of Odinist religious beliefs. The Court also found that Curzio did not dispute before the magistrate judge that he was a recreational marijuana user. (*Id.* at 28-30.)

Last, under § 3142(g)(4), in light of the strong evidence that Curzio committed the offenses and due to his violent criminal and gang-related history, the Court found that the nature and seriousness of the dangerousness to any person or the community that would be posed by Curzio's release weighed "in favor" of detention. Therefore, the Court found clear and convincing evidence that Curzio's release would be an unreasonable danger to the community, denied his motion for bond review, and ordered him to remain in custody. (*Id.* at 31-32.)

Since the prior motions hearing, the government has learned additional information about Curzio's case.

As reported by a Central Florida news station, Curzio made several statements about his plans to travel to Washington and the aftermath of the Capitol Riot. In a video he posted to his Facebook page before he was arrested, Curzio stated, "If anything happens – we get [expletive] up, arrested, or killed – just know, man, I love y'all, and I did what I believed in. And if you know me, you know I did it because I thought it was the right thing to do. After the Capitol Riot, he stated, "Our point was made yesterday. I have no regrets about anything."[2]

The government has identified Curzio in USCP surveillance video in the time leading up to and during his arrest in a corridor leading to the House of Representatives atrium.[3] Approximately nine minutes before Curzio arrives on screen, USCP officers are seen running down a stairwell as chairs tumble down the stairwell behind them. The officers then fall back to the background of the corridor. The government now knows that officers had formed a defensive line at the end of that corridor that is beyond the view of the video. The video shows one of the rioters pick up a chair and throw it toward the direction of where the officers had fallen back. Approximately eight minutes after that, Curzio is seen coming down the stairwell, wearing a gasmask. Another rioter appears to exhort others to go to the end of the corridor where others had massed and where we now know the officers formed their line. Curzio walks in that direction and reaches the area where others had massed.

The video further shows scrums break out between officers and rioters. Curzio watches at close range, at least once getting inadvertently brushed by the tussling, and appears to record with

---

[2] The news station's article and broadcast video representing Curzio's statements is available at https://www.wftv.com/news/local/marion-county/marion-county-man-among-those-arrested-chaos-capitol/IS6CF5CY5RGGBAWTQMSTYACV2A/.

[3] The government provided the surveillance video to defense counsel as preliminary discovery on April 12, 2021, following the Court's issuance of a protective order in this case earlier that day.

his cellphone rioters struggling with police during their arrests. Curzio does not engage in destructive or violent behavior, and does not appear to encourage or discourage disorderly conduct. A little less than two minutes after he arrived in the area where people had massed, an officer walks up to Curzio – who is standing by himself near a column in the corridor – appears to say something in his ear, and places him under arrest. Despite arguing in a prior pleading that he did not leave when ordered to do so because "it was impossible" due to "the large crowd that was blocking the exits," (ECF No. 29, 2/14/2021 Mot. to Modify Pretrial Detention Order at 4), the video shows there was ample room for him to leave that corridor, and exits were not blocked. Curzio remained compliant during his arrest.

During his re-arrest for these charges in the Middle District of Florida on January 14, 2021, Curzio made non-interrogational statements to the Federal Bureau of Investigation ("FBI") agents who booked him. He stated he did not hurt anyone or cause any damage while inside the Capitol. He also admitted a USCP officer asked him to leave the building, but he refused.[4]

On March 26, 2021, the D.C. Circuit issued its decision in *Munchel,* which applied the § 3142(g) factors to two defendants who were detained following their participation in the Capitol Riot. The D.C. Circuit remanded to the district court to consider whether they posed a sufficient threat given their conduct on January 6, 2021, and the "particular circumstances" on that date. *Munchel,* 2021 WL at *8.

---

[4] The government provided a copy of the FBI Form 302 that memorialized these statements to defense counsel on April 8, 2021.

5

## LEGAL AUTHORITIES

A detention hearing may be reopened at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).[5]  "'New and material information consists of something other than a defendant's own evaluation of his character or the strength of the case against him'; instead, it must consist of 'truly changed circumstances, something unexpected, or a significant event.'" *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (quoting *United States v. Esposito*, 354 F. Supp. 3d 354, 359 (S.D.N.Y. 2019)).

In determining whether pretrial detention is warranted for dangerousness, the Court should analyze four factors under 18 U.S.C. § 3142(g)(1)-(4): (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *Munchel,* 2021 WL at *4.  "To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *Id.* (quoting 18 U.S.C § 3142(f)).  A defendant's detention based on dangerousness "accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.*

---

[5] For clarity, the citation here to § 3142(f)(2) refers to the block of text underneath § 3142(f)(2)(B).

When considering the appropriateness of detaining two Capitol-Riot defendants who, unlike Curzio, had no significant criminal history or verified membership in a violent, extremist group, the court in *Munchel* held that preventive detention is appropriate where the defendant poses an "articulable threat . . . to an individual or the community." *Id.* at *7.

## ARGUMENT

Based on the recent *Munchel* decision, Curzio argues that the defendants in *Munchel* participated in the Capitol riot "in a much more significant manner" than he. (Motion at 2.) The D.C. Circuit remanded their case to the district court to further explain how, in light of "countervailing evidence" that they did not engage in violent or destructive activity, the district court found their conduct "poses a clear risk to the community." *Munchel,* 2021 WL at *8. Because of that, he implies this Court should determine that Curzio's conduct did not pose a sufficient threat to warrant pretrial detention. (Motion at 2.) Those arguments lack merit.

In *Munchel,* the defendants – Eric Munchel and his mother, Lisa Eisenhart – had no significant criminal history. The government produced evidence that after the Capitol Riot, Munchel had "contact" with the Proud Boys, an extremist group, but not that Munchel was an actual member. *Munchel,* 2021 WL at *1, *3, n.6

When they entered the Capitol, Munchel had a taser holstered on his hip and a pocketknife stashed in his backpack. After others had breached an entrance into the building, they pushed their way through the crowd, eventually entering an open door that police officers were not blocking. They stayed inside the Capitol for approximately 12 minutes. Munchel admonished other rioters not to vandalize anything. They both eventually took possession of zip ties they found in the building. Munchel took some home with him, and Eisenhart claimed she took them to keep them

7

away from "bad actors." As they left the Capitol, Munchel said to nearby police officers, "Sorry, guys, I still love you." The government did not present evidence that Munchel or Eisenhart assaulted anyone or destroyed property inside the building. *Munchel,* 2021 WL at *1-*2.

Due to the absence of evidence that Munchel and Eisenhart engaged in violent or destructive behavior or entered the Capitol by force, the D.C. Circuit found these factors "weigh against a finding that either pose a threat of 'using force to promote [their] political ends.'" It directed the district court to consider this on remand in determining whether they "pose a threat of committing violence in the future," and ultimately, in "making its dangerousness determination." The court noted, at least with respect to defendants with no significant criminal history, that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others had cleared the way." *Id.* at *8.

*Munchel* does not militate in favor of Curzio's release. The decision recognizes that *all* the factors under 18 U.S.C. § 3142(g) must be considered when determining whether detention is appropriate based on a defendant's dangerousness, including whether "the defendant's *history, characteristics,* and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Munchel,* 2021 WL at *4 (emphasis added). An analysis under all these factors demonstrates Curzio continues to pose a concrete, prospective threat to public safety.

Under § 3142(g)(1) – the nature and circumstances of the offense charged – the *Munchel* defendants were charged with felonies and weapons offenses, while Curzio is currently charged

8

only with four misdemeanors. But as this Court recognized during the last motions hearing, these misdemeanors do not begin to represent the gravity of the Capitol Riot.

Regarding the circumstances of the offenses, there are similarities between the *Munchel* defendants' conduct and Curzio's. There is no current evidence that Curzio engaged in violent or destructive behavior while inside the Capitol. Curzio was compliant during and after his arrest.

There some evidentiary areas where not enough information is currently known. For example, the government has not yet identified evidence depicting Curzio's moment of entry into the building, so it cannot represent whether he used force to enter, or if the entryway to the building was already open and unblocked by police.

But there are also significant dissimilarities where Curzio's conduct was more troubling than Munchel's. While Munchel admonished others not to be destructive inside the Capitol, Curzio joined an unruly mob that thrust objects and liquids at police officers. As a melee broke out between officers and individuals they attempted to arrest, he watched close by and appeared to record the action on his phone. While he did not play a first-hand role in that baneful conduct and did not appear to encourage it, he also in no way appeared to discourage it. Indeed, his statements before the Capitol Riot that he might get "[expletive] up, arrested, or killed," and his wearing a gasmask suggests he had prepared to be in the thick of disorderly activity that day. While Munchel was apologetic to officers as he left the building and told them he loved them, Curzio admittedly defied an officer's order to leave. Based on his Facebook post, he has "no regrets about anything" he did.

Under § 3142(g)(2) – the weight of the evidence – the evidence against Curzio remains strong, for the same reasons this Court articulated during the prior motions hearing. If anything,

9

the evidence is now overwhelming, as Curzio has now been identified in surveillance video depicting him committing the charged unlawful-entry offenses.

Under § 3142(g)(3) – the defendant's history and characteristics – Curzio's criminal history and characteristics place him in a different class of dangerousness than the *Munchel* defendants, and indicate he is a continuing threat.

Curzio neglects to note that the *Munchel* defendants' "history and characteristics weighed against a finding" of detention due to their lack of a significant criminal history. *Id*. By stark contrast, he has a prior recent conviction for Attempted First Degree Murder in Florida, a crime which, according to local news reports from Florida, involved him shooting the new boyfriend of his ex-girlfriend in the chest. After pleading guilty, Curzio was sentenced to eight years in prison, and appears to have been released early after spending at least five years incarcerated. Less than two years after his release for that serious, violent offense, he committed the current offenses, illustrating that his significant term of imprisonment did not chasten him from committing further criminal conduct.

In addition, unlike the *Munchel* defendants, Curzio has an undisputed history of membership with an extremist group, the Unforgiven, a violent white-supremacist gang operating both inside and outside the Florida corrections system. As established during the prior motions hearing, at the time of his arrest, he bore tattoos with Nazi symbology associated with that gang and was wearing a necklace with a Thor's-hammer pendant. While he claims the pendant is a representation of sincere religious belief, Thor's hammer is also known to be a white-supremacist symbol.[6] His admitted history of membership, permanent tattoos, and wearing the pendant suggest

---

[6] According to the Anti-Defamation League's website at https://www.adl.org/education/references/hate-symbols/thors-hammer, Thor's hammer can be a symbol of white supremacy or sincere Norse pagan religious belief:

Curzio's longstanding, if not ongoing, devotion to the Unforgiven's extremist, racist ideology and violent reputation.

Indeed, based on Curzio's troubling prior conviction for a very violent offense, his reoffending within two years of release, and his undisputed association with a violent, extremist gang, this Court found his history and characteristics weighed "heavily" in favor of detention under 18 U.S.C. § 3142(g)(3).

Finally, under § 3142(g)(4) – the nature and seriousness of the danger posed by the person's release – Curzio remains a defendant with a violent criminal history who unregretfully traveled over 900 miles to join a wild mob, unlawfully entered the Capitol, defied a police order to leave, and committed offenses that threatened the governance of the Republic. *Munchel* has not altered these facts.

Even following *Munchel* and considering all the factors under § 3142(g) – especially Curzio's "history and characteristics" – there is still clear and convincing evidence that no condition or combination of conditions can be imposed that would reasonably assure the safety of others and the community were Curzio to be released.

---

"Despite the widespread use of the Thor's Hammer symbol by white supremacists, the fact that it is an important symbol for non-racist Norse pagans means that one should never assume that the Thor's Hammer appearing by itself necessarily denotes racism or white supremacy. Instead, one should carefully judge the symbol in the context in which it appears."

11

## CONCLUSION

WHEREFORE, for the foregoing reasons, and for any other such reasons as may appear to the Court, we request that the Court DENY Curzio's Motion for Reconsideration of Pretrial-Detention Order, and that Curzio remain held without bond pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

*/s/ Seth Adam Meinero*
BY: _____
SETH ADAM MEINERO
Trial Attorney
Detailee
D.C. Bar Number 976587
United States Attorney's Office for the
    District of Columbia
Federal Major Crimes Section
202-252-5847
Seth.Meinero@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2021, I served a copy of this pleading on defendant's counsel through the Court's electronic case files system.

*/s/ Seth Adam Meinero*
_____
SETH ADAM MEINERO
Trial Attorney
Detailee
United States Attorney's Office for the
    District of Columbia