UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| | : |
| *v.* | : |
| | :    Crim. No. 21-0041(2) (CJN) |
| MICHAEL CURZIO, | : |
| | : |
| *Defendant.* | : |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR <u>RECONSIDERATION OF PRETRIAL DETENTION ORDER</u>

Defendant Michael Curzio ("Curzio"), by and though undersigned counsel, hereby respectfully submits his reply to the government's opposition to his Motion for Reconsideration of Pretrial Detention Order and states as follows:

### **FACTS**

On January 6, 2021, Mr. Curzio entered the United States Capitol and was subsequently arrested on the premises. Video recordings recently produced by the government demonstrates that several people initially entered an area of the Capitol and, as they did so, a few of the individuals threw chairs in the direction of Capitol Police officers. It does not appear that any officers were injured or struck by the chairs. The video also does not appear to depict anyone "throwing an unknown liquid at officers" nor "spraying an unknown substance at officers." Mr. Curzio appeared on the scene approximately 8 ½ minutes later and did not engage in any violent behavior. He did not throw anything at the police. He did not engage in any physical attack. He did not break anything. He did not engage in any activity besides milling about and filming the events in front of him. A police officer eventually approached Mr. Curzio, whispered something in his ear, and walked him off to be arrested. Mr. Curzio did not

resist. He did not fight the officer. He did not do anything but comply with the officer's commands.

At the March 9, 2021 detention hearing, this Court found that found that the nature and circumstances of the charged offenses, weight of the evidence, history and characteristics and danger to the community factors all weighed in favor of finding that no conditions of release would protect the community, *i.e.,* based on Mr. Curzio's alleged dangerousness. *See* 3/9/21 Tr. at 27 – 32; 18 U.S.C. § 3142(g)(1)-(4). In light of the Court of Appeals decision in *United States v. Munchel*, Mr. Curzio filed his motion for reconsideration of the pretrial detention order.

## **ARGUMENT**

In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4). To justify detention on the basis of dangerousness, the government must prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* § 3142(f). Thus, a "defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that she or he poses a *concrete, prospective threat to public safety*." *United States v. Munchel*, 2021 U.S. App. LEXIS 8810 at *12-13 (D.C. Cir. 2021) (emphasis added).

I.       **Nature and Circumstances of the Offense**

Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to the events of January 6. *United States v. Chrestman*, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021) (Howell, C.J.). These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses;" (2) "engaged in prior planning before arriving at the Capitol;" (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot;" or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct;" and (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." *Id*. at *7–8.

Mr. Curzio does not meet any of the considerations for severity set forth by Chief Judge Howell.  He is charged with four misdemeanors; there is no evidence that he engaged in prior planning before arriving at the capitol although he did wear a gas mask for protection; he did not use a dangerous weapon; he did not coordinate with others; he did not assume a leadership role; he did not damage property or threaten anyone or otherwise promote or celebrate efforts to disrupt the certification of the electoral vote count.  He did not even wear the tactical clothes apparently favored by other protestors.  The videos produced by the government demonstrate that Mr. Curzio merely milled about and recorded the events as he experienced them.

With respect to this factor, the Court also asserted:

> This isn't a case where the defendant is alleged to have simply trespassed into an empty government building or explored a restricted area in a reckless way. Instead, Mr. Curzio and a mob that accompanied him entered the U.S. Capitol while a joint session of Congress was meeting to certify the results of the Presidential election. Many of the rioters entered the Capitol for the express purpose of interrupting those proceedings. Thus, Mr. Curzio's participation in storming the Capitol on January 6th is far more serious than the statutory offenses charged. His participation demonstrates disregard for the rule of law, a democratic process, and a peaceful transition of power.

3/9/21 Tr. at 28.  With all due respect to the Court, Mr. Curzio disputes that assertion. According to a timeline of the events of January 6, 2021, at 2:14 p.m., Vice President Pence was removed from the Senate chamber and the Senate was called into recess.[1]  According to a Statement of Facts produced by the government, it was not until "at or about 3:00 p.m." that Mr. Curzio was observed inside the Capitol and subsequently arrested.  At that time, the proceedings in the Senate were already adjourned and were not interrupted by Mr. Curzio himself.  In fact, there is no evidence that the reason he was in the capitol was to "interrupt those proceedings."

Thus, his conduct is among the least severe of the participants in the events of January 6 and this factor weighs in favor of release.

## II.    Weight of the Evidence

Mr. Curzio is charged with four misdemeanor trespass offenses relating to his presence in the Capitol building on January 6.  The fact that he was arrested and captured on video recordings while at the Capitol would indicate that this factor weighs in favor of detention; however, it is "the least important" of the factors.  *See United States v. Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991).

---

[1] Found at: https://en.wikipedia.org/wiki/Timeline_of_the_2021_storming_of_the_United_States_Capitol

### III. History and Characteristics of Mr. Curzio

With respect to this factor, the Court questioned Mr. Curzio's ties to the community in that Mr. Curzio "failed to give even one example of such a tie." 3/9/21 Tr. at 29. Counsel has provided contact information to Probation Officer Schuck, who did make contact with Mr. Curzio's father and a friend and confirmed addresses and other information. Thus, he has established his ties to the community. Notwithstanding the Court's concern over Mr. Curzio' ties, the Court concluded that detention was appropriate based largely on Mr. Curzio's prior criminal record, which included a conviction for attempted first degree murder, as well as Mr. Curzio's past jailhouse membership with the Unforgiven, a Florida prison gang. The Court credited the government's argument that Mr. Curzio may currently be a gang member based on the tattoos on his arms. As argued at the hearing, Mr. Curzio became a member of the Unforgiven in order to survive in prison. He has been attacked several times by other prisoners because he was unaffiliated with any group and made the decision to join the gang for protection. The fact that he still bears tattoos does not indicate continued membership - it merely shows that he does not have the funds to remove the tattoos of a gang that he was disavowed and with whom he is no longer associated. It is notable that on January 6, 2021, Mr. Curzio did not go to the Capitol in the company of any gang members; he did not wear any gang colors; he did not give a Nazi salute; he did not have any posters with Nazi insignias. In short, his presence at the Capitol had nothing to do with his prior gang affiliation.

The government also argues that the Mr. Curzio's wearing of a "Thor's Hammer" necklace suggests "devotion to the Unforgiven's extremist, racist ideology and violent reputation." Gov. Opp. at 11 – 12. That is not the case. Mr. Curzio practices "Traditional

5

Odinism" an offshoot of the Odinic Rite, a "Heathen organization practicing a form of religion termed Odinism after the chief god of Norse mythology, Odin[2]. It is a reconstructionist religious organization focusing on Germanic paganism, Germanic mythology, Norse paganism, and Anglo-Saxon paganism."[3] He should not be punished because he wears a pendant representative of his religion, much like a cross or a Star or David.

### IV.   Safety to Any Other Person and the Community

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). To justify detention on the basis of dangerousness, the government must prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* § 3142(f).

Relevant to this case, *Munchel* noted that the "crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat.' Therefore, to order a defendant preventatively detained, a *court must identify an articulable threat posed by the defendant to an individual or the community*." *Munchel* at *19 (quoting *United States v. Salerno*, 481 U.S. 739 (1987))(emphasis added). While the threat need not be of physical violence, it "must be clearly identified." *Id. Munchel* also directed the district court to consider the "specific circumstances that made it possible, on January 6, for [defendant]

---

[2] In Norse/Viking mythology, Thor is the son of Odin. *See* https://www.historyhit.com/thor-odin-and-loki-the-most-important-norse-gods-deity/
[3] *See* https://en.wikipedia.org/wiki/Odinic_Rite

6

to threaten the peaceful transfer of power. The appellants had a unique opportunity to obstruct democracy on January 6 because of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests." *Id.* at *23.

### A. Mr. Curzio does not pose an identifiable articulable threat to an individual or the community.

The Court found that the fourth factor weighed in favor of detention because of Mr. Curzio's

> disregard for the violence occurring around the Capitol, his failure to follow police orders that day, his prior conviction for attempted first degree murder, and his prior at least affiliation with a white supremacist gang known for violence, indicate Mr. Curzio does pose a danger to the community if he's not retained pretrial.

3/9/21 Tr. at 31-32.

While Mr. Curzio may have been a member of a prison gang while he was incarcerated, there is simply no evidence that prior gang affiliation had anything to do with this entry into the Capitol on January 6. There is no evidence that he engaged in any prior planning with any gang members; he did not wear gang colors; he did not post any gang related material; and he did not in any manner invoke his prior gang affiliation before, during or after the protest. He also did not carry or use a weapon; he did coordinate with others; nor did he assume a leadership role. It is undisputed at this point that all he did was mill about and record the events of the day. In sum, the government has not shown that Mr. Curzio poses a concrete and prospective threat to public safety. *Munchel*, at *12-13. The D.C. Circuit has noted that, "[i]n our view, those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the

7

Capitol after others cleared the way." *Munchel*, at *22. Here, Mr. Curzio's nonviolent conduct on January 6 places him squarely in the lowest "category of dangerousness" and weights in favor of release.

### B. The unique circumstances of January 6 no longer exist

In *Munchel,* the D.C. Circuit also found that the trial court failed to consider the unique circumstances and large crowds that made the actions of the defendants possible on January 6. Without those unique circumstances, the alleged conduct of defendants would not have been possible and are therefore unlikely to pose a threat of reoccurring in the future.

Much like *Munchel* stated about the defendants in that case, in this case Mr. Curzio

> had a unique opportunity to obstruct democracy on January 6 because of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests. Thus, [Mr. Curzio was] able to attempt to obstruct the electoral college vote by entering the Capitol together with a large group of people who had gathered at the Capitol in protest that day. Because [Mr. Curzio] did not vandalize any property or commit violence, the presence of the group was critical to [his] ability to obstruct the vote and to cause danger to the community. Without it, [Mr. Curzio]—… who did not engage in any violence and who [was] not involved in planning or coordinating the activities— seemingly would have posed little threat.

*Munchel*, at *23. Thus, without the protests scheduled for January 6 and the events surrounding that date, Mr. Curzio does not pose an identifiable and articulable threat and should be released.

### V. Several more culpable defendants have been released without government objection

The government has not objected to the release of more culpable defendants who actually assaulted police officers. *See* Statement of Facts (Jan. 7, 2021), ECF No. 1-1 & Min. Entry (Jan. 8, 2021), *United States v. Leffingwell*, 21-CR-5 (D.D.C.) (defendant repeatedly

punched officer with closed fist in attempt to push past wall of officers); Statement of Facts (Jan. 18, 2021), ECF No. 1-1 & Min. Entry (Jan. 19, 2021), *United States v. Gossjankowski*, 21-CR-123 (D.D.C.) (defendant activated taser within tunnel multiple times as he pushed towards the police line); Statement of Facts (Feb. 9, 2021), ECF No. 1-1 & Min. Entry (Feb. 17, 2021), *United States v. Blair*, No. 21-CR-186 (D.D.C.) (defendant struck an officer in the chest with a lacrosse stick); Statement of Facts (Jan. 13, 2021), ECF No. 1-1 & Min. Entry (Mar. 2, 2021), *United States v. Sanford*, 21-CR-86 (D.D.C.) (defendant hurled a fire extinguisher that struck one officer and ricocheted off two other officers' helmets); Statement of Facts (Feb. 16, 2021), ECF No. 1-1 & Min. Entry (Apr. 9, 2021), *United States v. Coffee*, 21-MJ-236 (D.D.C.) (defendant pushed a crutch into an officer's body at the archway to the tunnel and then charged at several officers in the tunnel with the crutch).[4] It would appear that the government's repeated efforts to keep Mr. Curzio detained stem at least in part from his religious belief in Odinism. Granted, some of these defendants may not have had Mr. Curzio's prior criminal record. Nevertheless, no matter how odious his prior gang affiliation may be considered, the government is not a "thought police" that can punish him for his beliefs.

### VI. Continued detention may cause Mr. Curzio to serve more time than that to which he would most likely be sentenced

Mr. Curzio has been charged with 4 misdemeanor offenses which carry a cumulative maximum of three years in prison. The guidelines for these offenses are approximately in the 1 - 7 month range. He has already been detained for over three months. With the Court having granted the government's speedy trial motion and declared this matter complex, and considering the delays occasioned by the ongoing pandemic, this matter could well

---

[4] Compiled by *United States v. Klein*, No. 21-236 (JDB), 2021 U.S. Dist. LEXIS 69951, at *34-35 (D.D.C. Apr. 12, 2021).

9

proceed for many more months resulting in detention possibly longer than to what he may likely by sentenced. This is another factor that weighs in favor of release.

**WHEREFORE** for the foregoing reasons and any others that may appear to the Court, Mr. Curzio respectfully requests that he be released pending trial in this matter subject to conditions imposed by the Court.

**Dated**: Washington, DC
April 19, 2019

**BALAREZO LAW**

By: /s/
_____
A. Eduardo Balarezo, Esq.
D.C. Bar # 462659
400 Seventh Street, NW; Suite 306
Washington, DC  20004
Tel. 202-639-0999
Fax. 202-639-0899

*Counsel for Defendant Michael Curzio*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of April 2021, I caused a true and correct copy of the foregoing Defendant's Reply to Government's Opposition to Defendant's Motion for Reconsideration of Pre-Trial Detention Order to be delivered to the parties in this matter via Electronic Case Filing (ECF).

/s/
_____
A. Eduardo Balarezo